**EXHIBIT 7**

**Randy Scott-All Claims Process, LLC**

| | |
|---|---|
| **From:** | PAUL K. TAMAROFF [ptamaroff@aps-ga.net] |
| **Sent:** | Wednesday, November 21, 2012 3:47 PM |
| **To:** | randy@capecoralprocess.com; randy@fortmyersprocess.com |
| **Cc:** | Larry Yellon |
| **Subject:** | Yellon v. Scott; Case No. 12-PT-UC-32 |
| **Attachments:** | Yellon v. Scott.pdf; ATT00080.htm |

Exhibit 7 includes the written complaint attachments Yellon V Scott minus President Yellon's exhibits.

Re: Unethical Conduct Complaint: Yellon v. Scott

Case No. 12-PT-UC-32

Dear Member Scott:

Attached hereto is a copy of the Unprofessional Complaint in the above matter filed by Member Yellon.

Pursuant to Policy No. 4, paragraph H-1, of the NAPPS Policy Manual (a copy of which you will find on the website and in the printed directory), a Reply to the Complaint must be received within fourteen (14) days from the date of this letter. In view of the Thanksgiving Holiday weekend, and to insure that you have the full fourteen (14) days to prepare your reply, this complaint is being forwarded to you by e-mail, as well as by first-class mail.

Your Reply must be directed to the undersigned and should refer to the above case name and number. Should no Reply be received, the matter shall be submitted directly to the Board of Directors for appropriate action pursuant to Policy No. 4, paragraph H-4 of the Policy Manual. Such appropriate action may include sanctions up to and including revocation of your membership.

Paul K. Tamaroff, Grievance Chair

cc. Larry Yellon



® **NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS**

**Arbitration & Grievance Committee**
Paul K. Tamaroff, Chair
P.O. Box 7710
Atlanta, GA 30357
(404) 872-1200 - Fax: (404) 872-4578
ptamaroff@aps-ga.net

November 13, 2012  ???

Randy A. Scott, AFPS
All Claims Process LLC
343 Hazelwood Avenue
Lehigh Acres, Florida 33936-5876

Re:   Unethical Conduct Complaint: Yellon v. Scott
      Case No. 12-PT-UC-32

Dear Member Scott:

Enclosed please find a copy of the Unprofessional Complaint in the above matter filed by Member Yellon.

Pursuant to Policy No. 4, paragraph H-1, of the NAPPS Policy Manual (a copy of which you will find on the website and in the printed directory), a Reply to the Complaint must be received within fourteen (14) days from the date of this letter. In view of the Thanksgiving Holiday weekend, and to insure that you have the full fourteen (14) days to prepare your reply, this complaint is being forwarded to you by e-mail, as well as by first-class mail.

Your Reply must be directed to the undersigned and should refer to the above case name and number. Should no Reply be received, the matter shall be submitted directly to the Board of Directors for appropriate action pursuant to Policy No. 4, paragraph H-4 of the Policy Manual. Such appropriate action may include sanctions up to and including revocation of your membership.

Very truly yours,

Paul K. Tamaroff, Grievance Chair

cc.   Larry Yellon

**1982**   30 Years of Leadership   **2012**

Paul Tamaroff
NAPPS A&G Committee Chair
P.O. Box 7710
Atlanta, GA 30357

      Re: Unethical Conduct Complaint against Randy A. Scott

Dear Mr. Tamaroff:

This letter is a formal grievance for unethical conduct against NAPPS member Randy A. Scott of All-Claims Process, LLC in Florida.

The NAPPS Code of Ethics states in part: *"In the conduct of a member's professional and non-professional activities, nothing shall be done that would impugn the position, reputation, or name of this Association, its members, or the process serving profession."* It also states, *"Everything possible shall be done to avoid the appearance of impropriety..."*

At some point in time, Member Scott copied all of the email addresses of the NAPPS membership from the NAPPS website. This is known because many members use a designated email address that they only use for their membership listing in order to track what work comes through the NAPPS website (including some board members). In January, 2012, Member Scott created an email "group" through Google called "2200members@googlegroups.com." The number 2200 is significant, as it was the number of members NAPPS had at that time. On several occasions emails were sent out to the entire NAPPS membership, announcing this discussion group and many were included not because they signed up, but because they failed to opt-out. During January and February, 2012, there was a targeted campaign occurring on a website known as NappsWatcher designed to destroy my reputation, that of the NAPPS board and our administrator.

On February 21, 2012, Member Scott sent an email to the NAPPS membership (attached as Exhibit 1). In this email, he states the Google group is shutting down and directs members to join a Facebook discussion page. He then comments, in part, "Also for those of less than faint at heart I received an email on January 12 telling me to visit http://www.nappswatcher.com. I got this email right when I started publishing this google group...it appears to be an organized effort to boot some out of NAPPS...right or wrong it is drama that leads to discussion." While it is not known how many NAPPS members knew of the NappsWatcher site, this was a clear effort to drive NAPPS members to that site.

On April 15, 2012, Member Scott sent a two-page email from process@randyscott.us (attached as Exhibit 2). It was sent to the entire NAPPS membership, Jason Orme (NAPPS CPA), the IRS and also posted on the Facebook page serviceofprocess@groups.facebook.com, where a substantial portion of its readers are not members of NAPPS. The email expressed Member Scott's concerns over monies paid to

Unethical Conduct Complaint against Randy A. Scott
November 21, 2012
Page 2

the New York State association. The second half of the lengthy email has a section addressed directly to the IRS. It states in part:

> "To the IRS: "…They [the NAPPS board] have used policy to expel members who inquire into records to evaluate and hold them accountable. They recently created a policy that suggests if two or more members share among themselves financial records to evaluate the proper handling of compliance issues they will be disciplined up to and including expulsion. The board has proven this recently by expelling a former president because he talked about finances that he believed were improperly reported to you the IRS."

As NAPPS President at the time of these incidents, I can say unequivocally that these statements are completely untrue. NAPPS did create a record request policy that prohibits a member that has received records through a record request from disseminating those records to others. The policy covers all records, not just financial as Member Scott suggests, so as to preclude from public dissemination, including posting such records on websites (which Member Scott had already done with various NAPPS records). As reported to the membership in the Docket Sheet, "The substance of the grievance against member Bannister were comments he made that impugned the reputation of a member(s) and the Association, coupled with a previous Public Reprimand for similar conduct." Member Scott's email, sent to such a large group of people which includes members, non-members and other professionals, impugns the reputation and integrity of each individual board member. There can be no doubt but that this email, containing intentionally false and misleading information, caused many potential members from joining NAPPS and caused many members to call into question the events surrounding the Bannister revocation of membership.

In June, 2012, Member Scott filed articles of incorporation for "Independent Professional Process Servers of America", a national non-profit association for process servers, and created a website at www.ippsoa.com. On this website, Member Scott is listed as "Administrator." The site, to date, does not list any bylaws, policies, procedures or a board of directors, leading one to conclude Member Scott is the sole leader and decision maker on its behalf.

During the period November 15 and November 17, 2012, Member Scott sent a flurry of emails to the entire NAPPS membership using the email address admin@ippsoa.com.

On November 15, 2012 Member Scott sent a two-page e-mail (attached as Exhibit 3) to the NAPPS membership using the subject line "Open Letter to NAPPS – 5th District of Florida smackdown of process server." In this email he states "All members should be allowed to vote for the board via electronic means just like the board did on October 4th,

Unethical Conduct Complaint against Randy A. Scott
November 21, 2012
Page 3

2012. If all members were allowed to vote they may..." What follows are 13 specific points, each of which ends with the words "or they may not." An example of which is "support giving the Texas association $25,000 or not." I question whether the words "or not" affords Member Scott the ability to make statements that are completely fabricated, such as the example above (Texas has never requested $25,000). The NAPPS administrator received many emails from concerned members who believed everything stated in these 13 points were either being done or are being proposed, including "support you letting Serve-Now take over the directory and promotions, or not."

Following the 13 points in this email is a section titled "In the board agenda agenda (sic)." In this section, Member Scott states "Paul Tamaroff resigned from membership. Someone behind the scenes refused to accept the resignation even though the board accepted it without reconsideration. Then he was appointed as the AG chair who will we expel next?" The insinuation that something sinister occurred with the Tamaroff "resignation" defies all sense of logic. Although the term "resignation" was used by Board members, in fact, Member Tamaroff simply mentioned his plans to allow his membership to lapse. This was completely handled in an open session board meeting and is in the meeting minutes. The majority of the board (myself included) refused to accept his resignation – a prerogative of the Board. There is no such thing as reconsideration of a resignation. There is no question but that these statements serve only one purpose: to attack my motives for making this appointment and also to attack Paul Tamaroff's integrity as acting chair of the committee. To insinuate to the entire membership that the president specifically appointed someone, a multi-term past president and 10-year chair of the same committee no less, for the purpose of expelling certain individuals is outrageous at the very least.

At the end of the November 15, 2012 e-mail Member Scott states "What do you think? Come join the discussion at http://www.facebook.com/groups/processservers/. This is then followed by "Open letter sponsored by www.ippsoa.com come visit us and join over 300 of us free, or not."

On November 16, 2012, three emails were sent to the NAPPS membership from admin@IPPSOA.com (all are attached as Exhibits 4, 5 and 6 respectively). Exhibit 4 has the subject line of "HOT OFF THE PRESS—NAPPS Board Officers and Directors file lawsuit against those who spoke against them. After identifying the lawsuit and that it was related to NappsWatcher he states "For now IPPSOA knows it is related to questioning the authority of the board and administration..." This is followed by "Come join the discussion over at Facebook http://www.facebook.com/groups/processservers/.

Unethical Conduct Complaint against Randy A. Scott
November 21, 2012
Page 4

Exhibit 5 has the subject line, "NAPPS Board of directors and officers file lawsuit against anonymous BLOGGERS." Here, Member Scott identifies the lawsuit but states "For now IPPSOA knows it is related to the NAPPSWATCHER.com site and the anonymous bloggers who posted on it." Member Scott then adds, "The bloggers question the administrations unaudited financial practices as it relates to accounting of the association's finances." At the end of this email Member Scott states he wants absentee ballots at the annual meeting so that "the few can be properly placed and overcome by the many…come visit and join IPPSOA.com."

Exhibit 6 has the subject line "Hello Texas Surprise I will tell you…..NAPPS meeting is in New Orleans tomorrow at 9:00am. This email begins with "Hello Texas! The following is a letter I just sent out to the NAPPS board and others just simply asking for some transparency by presenting questions relating to their meetings and finances. I know your local leaders will be at this meeting, as they have a goal of tapping into some NAPPS funds…" Why Member Scott believes the Texas Process Server Association is requesting funds is unknown, because they are not. Following this statement, Member Scott then questions in great detail why so much money was spent at the February, 2012 board meeting. After his lengthy analysis, filled with false assumptions and misinformation, he makes the statement,

> "Regretfully these discrepancies teamed up with the private cruise that was taken at this Fort Lauderdale meeting (of course the cruise was not paid for by the NAPPS, but getting there certainly saved the participants some funds) is not good PR in this lean days of purpose. I was prepared to go to this meeting in Fort Lauderdale but as soon as I hear the board was cruising together I decided it wasn't a meeting worth attending as the board's minds may be elsewhere.
> This is sling shot finances and probably should not be done on a non profits dime, at least until it proves accountability to those they represent."

There are just so many untrue statements and false accusations. To say he did not attend the meeting because the "board's minds may be elsewhere" is an example of the reckless behavior that can only be called slanderous and cannot be tolerated.

This email asks questions and claims wrongdoing unsupported by facts. There can be no question that these accusations and attacks (i.e. claiming sling shot finances and IRS investigations) are impugning the reputation of NAPPS, the board and committee chairs.

It should be pointed out that had he actually contacted the NAPPS administrator, or any board member prior to this coast-to-coast email campaign, he would have learned that there is a resolution that mandates "ALL MacDonald Award Committee members are

Unethical Conduct Complaint against Randy A. Scott
November 21, 2012
Page 5

both paid a stipend and two room nights to attend the February board meeting". This is a considerable expense, as it can add up to seven additional stipends and 14 additional room nights. This is in addition to the two stipends the president has the ability to give. It is at this meeting that the MacDonald Committee meets and decides who will receive the award at the annual conference. Adding to this increase of expenditures is the amount of food that is supplied in the meeting room and the lunch that is provided to all meeting attendees. Instead of asking such simple questions, Member Scott instead hurls accusations, misinformation and comments about a cruise in order to spark outrage in the membership, reflecting an attitude that is not simply reckless, but an intentional disregard of the facts, for the purpose of inflicting harm to the position, reputation and name of NAPPS, its membership, all in violation of Code of Ethics No. 1. It is no surprise that each of his emails end with a solicitation to join IPPSOA and his Facebook page.

Currently, when a member of NAPPS clicks on the "unsubscribe" link on the bottom of any of the IPPSOA emails, the NAPPS member receives a confirmation email (see Exhibit 7) where the subject line reads "NAPPS: you are now unsubscribed." In the body of the confirmation is a very large "NAPPS...We have removed your email address from our list." The NAPPS administrator has already received emails from members fearful that they may have just opted out of receiving NAPPS emails. His actions show a clear attempt to cause confusion among our membership and for our members to second-guess their removal from his list, because they think it is NAPPS list.

It is obvious to me that Member Scott, from the moment he was accepted as a member of NAPPS, has been conducting a campaign to impugn the reputation of NAPPS using unfounded accusations. His motives are clear: drive members of NAPPS to his own discussion groups and now his own association – IPPSOA, an association that has no posted bylaws, policies or even a board of directors. He does not seek answers to his questions, but, instead accuses board members and the administrator of abusing authority, fiscal irresponsibility, violating policies and even IRS tax laws. His email campaigns continue to harass our membership by the sheer volume, not to mention the overwhelming attacks on the entire board of directors and the administrator. The time has come to put an end to this all-out assault campaign.

Respectfully submitted,

Larry Yellen
NAPPS Member