UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RANDY A. SCOTT,

    Plaintiff,

v.

LAWRENCE NORMAN YELLON, BOB MUSSER, H. ERIC VENNES, LANCE RANDALL, RONALD R. EZELL, STEVEN D. GLENN, JILLINA A. KWIATKOWSKI, RUTH A. REYNOLDS, GARY CROWE, NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS, PAUL TAMAROFF, FLORIDA ASSOCIATION OF PROFESSIONAL PROCESS SERVERS and JOHN AND/OR JANE DOE 1-3,

    Defendants.

Case No. No. 2:13-cv-157-Ftm-38DNF

DISPOSITIVE MOTION

**DEFENDANTS' MOTION TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

    In accordance with Fed. R. Civ. P. 12(b)(6), defendants Lawrence Norman Yellon ("Yellon"), Bob Musser ("Musser"), H. Eric Vennes ("Vennes"), Lance Randall ("Randall"), Ronald R. Ezell ("Ezell"), Steven Glenn ("Glenn"), Jillina A. Kwiatkowski ("Kwiatkowski"), Ruth A. Reynolds ("Reynolds"), Gary Crowe ("Crowe"), Paul Tamaroff ("Tamaroff"), National Association of Professional Process Servers ("NAPPS"), collectively "defendants" move the court for an order dismissing the claims of plaintiff, Randy A. Scott, on the grounds that they are insufficiently plead.

I.   **INTRODUCTION**

Plaintiff's complaint is filled with bare, unsupported, and false allegations of so called "facts." Defendants refute plaintiff's allegations. However, even viewing them through the prism necessary under Fed. R. Civ. P. 12(b)(b), plaintiff fails to state claims upon which relief can be granted. Therefore, Defendants' Motion to Dismiss should be granted.

Plaintiff, Randy A. Scott, is a former member of the National Association of Professional Process Servers ("NAPPS"). Plaintiff was expelled from NAPPS membership after repeatedly publishing untrue statements to NAPPS's membership directly and via an e-mail listserv and to the general public through multiple websites. When NAPPS members tried to unsubscribe from his email blasts, they received false notices indicating that they were unsubscribing from the legitimate NAPPS listserve. Unhappy with NAPPS's decision to revoke his membership, plaintiff filed the subject complaint against NAPPS, the Florida Association of Professional Process Servers ("FAPPS"), and various board members and officers of NAPPS and its state affiliates, as well as unknown defendants. Plaintiff's complaint contains a host of claims ranging from violations of the Racketeer Influenced and Corrupt Organizations statute ("RICO") to defamation. Plaintiff does not, however, allege facts sufficient to support any of his claims. Accordingly, defendants request that the court grant its motion to dismiss plaintiff's complaint in its entirety.

II.   **FACTUAL BACKGROUND**

   A.   **Expulsion From Membership.**

On November 13, 2012, Larry Yellon, a NAPPS member and former NAPPS president, filed an Unethical Conduct Complaint against plaintiff for publishing untrue statements and false accusations to NAPPS's members in an apparent attempt to drive them to his own organization.

For example, plaintiff copied the e-mail addresses of NAPPS membership from the NAPPS website and created an e-mail group through Google that he used to direct members to http://nappswatcher.com, which plaintiff claimed to be an organized effort to boot members from NAPPS. Plaintiff later shut the e-mail group down and began e-mailing members from the address admin@ippsoa.com ("IPPSOA" stands for Independent Professional Process Servers of America," an organization for which plaintiff filed articles of incorporation and appointed himself administrator). Plaintiff used the IPPSOA address to send a slew of e-mails to NAPPS's membership, alleging that NAPPS was misappropriating funds and filing lawsuits against dissenters. If a NAPPS member attempted to unsubscribe from plaintiff's e-mails, the NAPPS member received a confirmation e-mail telling the member that his or her e-mail address had been removed from NAPPS's list. Plaintiff's actions show a clear attempt to destroy NAPPS's reputation and confuse its members.

On January 7, 2013, NAPPS notified plaintiff that the board of directors had voted to revoke his NAPPS membership. After reconsideration, the board of directors affirmed its decision. The board's decision to affirm was partially based on plaintiff's stated position that if NAPPS reinstated his membership, he would continue to engage in the activities for which his membership was revoked.

**B.      Complaint.**

On March 4, 2013, plaintiff filed a complaint with this court against NAPPS, FAPPS, multiple board members and officers of NAPPS and its state affiliates, and unnamed defendants. Plaintiff's complaint consists almost entirely of unsupported and false allegations that NAPPS misused association funds, evaded taxes, and used nonprofit resources in a manner that is

inconsistent with guidelines of the Internal Revenue Service (the "IRS").

Plaintiff's redundant allegations are difficult to follow and unsupported. Plaintiff alleges that over "the past 30 years and specifically the last 5 years NAPPS has materially misstated" income advertising and evaded taxes. (Compl. ¶ 81.) In an attempt to support his claim, plaintiff makes the following bare allegations:

- NAPPS misstated income advertising "by combining it improperly as program services revenue, member revenue or other various improper entries over time," and over $100,000 in advertising revenue has not been reported. (Compl. ¶ 94.)

- NAPPS's administrator "misstates the total revenue evades 80K in taxes." (sic) (Compl. ¶ 125.)

- NAPPS's program services revenue contains advertising revenue in an attempt to evade taxes and NAPPS misreported "Unrelated Business Taxable Income . . . of over $500,000.00 over the past 3 years or a potential tax avoidance of over $200,000.00." (Compl. ¶¶ 133, 157.)

Plaintiff does not provide the basis for any of these allegations, nor does plaintiff explain how he arrived at his figures. Instead, he simply alleges his claims upon "information and belief." (Compl. ¶ 94.)

Plaintiff further states that NAPPS misreported funds on its IRS filings, alleging that "upon information and belief" money listed as an "equipment lease" and money listed as a "GRANT" in NAPPS's profit and loss budget is actually "*believed* to be payment of funds to Tennessee." (Compl. ¶ 128 (emphasis added.))   Here, plaintiff essentially fabricates an

allegation of fraud and admits to supporting it with belief alone. Plaintiff's final conclusory allegation is that NAPPS's provision of money and in-kind distribution to "non tax exempt" state process-serving associations for attendance at NAPPS conferences constitutes "conversion of tax-exempt funds to non tax-exempt purposes." (Compl. ¶ 129.)

Plaintiff also vaguely alleges that he has contacted the IRS and United States Department of Justice (the "DOJ") about NAPPS but does not provide any substance or specify whom he contacted and how. For example, plaintiff claims that he contacted the DOJ and the IRS in February and March 2012, asking for "guidance into the specific questions of IRS reporting and antitrust issues" that plaintiff had regarding NAPPS. (Compl. ¶ 23.) Plaintiff then claims that on March 9, 2012, he contacted the DOJ regarding his findings "relating to issues with private gain and IRS fraudulent tax filings." (Compl. ¶ 98.) On the same day, plaintiff claims that he "contacted the IRS division of Exempt Organization enforcement" to explain his concerns about conversion of funds to "non tax exempt eligible charters, and how NAPPS is materially misstating its reports to them." (Compl. ¶ 150.) Plaintiff also claims to have contacted the IRS on September 18, 2012, "relating to the material issue of misreporting Unrelated Business Taxable Income" (Compl. ¶ 157), and again on March 15, 2012, "to make a complaint . . . relating to the fraudulent evasion of taxes." (Compl. ¶ 177.) Plaintiff's claims of contact with the IRS and the DOJ are unclear and nebulous at best.

Plaintiff's central claim seems to be that NAPPS revoked his membership in the organization in an attempt to retaliate against plaintiff's undescribed contact with the DOJ and the IRS. Plaintiff claims that this retaliation and NAPPS's alleged tax evasion are predicate acts supporting his claim that defendants violated RICO. Plaintiff also brings claims for mail and

wire fraud, violations of the Sarbanes-Oxley Act's whistleblower provision, breach of contract, wrongful termination, and defamation based on NAPPS's alleged tax evasion, its retaliation, and his expulsion from membership. Like plaintiff's RICO claim, these claims are groundless, unsupported, false, and subject to dismissal.

### III.    STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain "sufficient [facts] to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations [to survive], a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation and citations omitted). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. If a plaintiff "[has] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570. If "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal punctuation and citations omitted). Furthermore, courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]" that may suggest lawful conduct rather than the unlawful conduct that plaintiff asks the court to infer. *Id.* at 682 (internal

quotation marks and citation omitted).  Plaintiff's unsupported theories of tax fraud may be possible, but they certainly are not plausible.  Measured against these standards, plaintiff's complaint fails to state a claim for relief and should be dismissed in its entirety.

IV.   **ARGUMENT**

    A.   **Plaintiff Has Failed to Allege Sufficient Facts to State a RICO Claim.**

In order to bring a successful claim under RICO, a plaintiff must establish three things: (1) violation of the statute, (2) injury to the plaintiff's business or property, and (3) that the plaintiff's injury was caused by the RICO violation.  18 U.S.C. § 1962(c).  Causation is crucial to a RICO claim, and the U.S. Supreme Court has held that in order to satisfy the element of causation, a plaintiff must allege that the defendant's RICO violation is both the actual and proximate cause of the alleged injury.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267-68 (1992).  In other words, the alleged RICO violation must have led directly to the plaintiff's injuries.  *Anza,* 547 U.S. at 460.

RICO makes it unlawful for an employee of an enterprise engaged in interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c).  A pattern of racketeering activity requires the commission of at least two predicate acts of racketeering activity occurring within ten years of each other.  18 U.S.C. § 1961(5).

RICO makes it illegal for anyone to conspire to violate one of its substantive provisions, including Section 1962(c).  18 U.S.C. § 1962(d).  "A plaintiff can establish a RICO conspiracy claim in one of two ways:  (1) by showing that the defendant agreed to the overall objective of

the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997) (citing *United States v. Church*, 955 F.2d 688, 694 (11th Cir.), *cert. denied*, 506 US 881 (1992)). Plaintiff contends that defendants violated RICO by committing multiple predicate acts. Plaintiff fails, however, to allege facts sufficient to support defendants' commission of any single predicate act.

> 1. **Plaintiff's claims that defendants committed predicate acts by tampering with a witness and obstructing a federal investigation must be dismissed because the statutes delineating these crimes do not apply.**

Under RICO, it is unlawful for any person to participate in an illegal enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" is defined to include such predicate acts as tampering with a witness in an official proceeding in violation of 18 U.S.C. § 1512 and impeding or obstructing federal investigations and bankruptcy proceedings in violation of 18 U.S.C. § 1519. 18 U.S.C. § 1961(1). Section 1962(d) of RICO makes it illegal for anyone to conspire to violate one of RICO's substantive provisions, including Section 1962(c).

Plaintiff claims that defendants violated both 18 U.S.C. § 1512 and 18 U.S.C. § 1519. Section 1512 applies to tampering with a witness in an official proceeding, and Section 1519 applies to the destruction, alteration, or falsification of records in an effort to impede or obstruct federal investigations or bankruptcy proceedings. "Official proceeding" is defined as, inter alia, "a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official . . . or examiner appointed . . . to examine the affairs of any person engaged in the business of insurance whose activities affect

interstate commerce." 18 U.S.C. § 1515(a)(1)(D).  Plaintiff does not allege, nor can he allege, that defendants tampered with him during an official proceeding.  Additionally, NAPPS is not the subject of a federal investigation or bankruptcy proceeding.  Therefore, 18 U.S.C. § 1512 and § 1519 are completely inapplicable, and plaintiff's complaint cannot support his claim that defendants committed predicate acts by tampering with a witness or obstructing a federal investigation or bankruptcy proceeding.

### 2. **Plaintiff cannot claim retaliation as a predicate act under RICO because plaintiff does not allege facts sufficient to show that he communicated truthful facts about the commission of a federal offense to law enforcement.**

Plaintiff further alleges that defendants retaliated against him by expelling him from NAPPS membership for reporting defendants' alleged tax fraud to the IRS in violation of 18 USC § 1513(e), a predicate act under RICO.  18 U.S.C. § 1961(1).  Section 1513(e), however, applies to retaliation for providing "truthful information relating to the commission or possible commission of any Federal offense" to law enforcement officers.

In his complaint, plaintiff admits that his allegations regarding tax fraud are based on "information" (which he does not identify) and "belief."  (*See, e.g.*, Compl. ¶¶ 94, 128.)  Furthermore, plaintiff alleges material misstatements on NAPPS's IRS 990 forms, but does not explain how he knows that defendants misstated income or allocated expenses in the manner he alleges.  (*See* Compl. ¶¶ 81, 94, 125, 128, 129, 133, 157.)  Nor does plaintiff go beyond his conclusory allegations of fraud to point to any authority or provision of the tax code supporting his statements that defendants committed a federal offense.  In other words, plaintiff does not allege the commission of an actual crime.  Therefore, plaintiff's complaint suggests that any information that plaintiff provided to law enforcement is not truthful and does not support the

commission of a federal offense, as required by Section 1513(e)'s terms.

Moreover, plaintiff has no more information regarding defendants' tax and accounting activities than the general public or the IRS—it is not as though plaintiff were an insider with actual knowledge of the fraud that he alleges. Plaintiff cannot simply fabricate ways that defendants may have misstated components of an IRS form, then hide behind Section 1513(e). The statute covers "truthful" information, which requires actual knowledge, presumably to ensure that the law provides protection only to plaintiffs making legitimate claims regarding federal offenses rather than those concocting theories of criminal conduct.

In addition to making unsupported allegations of fraud, plaintiff's complaint contains virtually no details regarding his communications with the DOJ and the IRS. Plaintiff claims that he contacted the agencies, asking for "guidance into the specific questions of IRS reporting and antitrust issues" regarding his findings "relating to issues with private gain and IRS fraudulent tax filings" and "to make a complaint . . . relating to the fraudulent evasion of taxes." (Compl. ¶¶ 23, 98, 177.) Plaintiff does not give details about whom he spoke with at each agency, what information he reported, or whether he reported actual information at all.

Plaintiff's activities do not fall under 18 U.S.C. § 1513(e)'s protection; thus, plaintiff cannot rely on the statute to establish the commission of a predicate act in support of his RICO claim.

### 3. **Plaintiff cannot show that defendants committed mail or wire fraud as a predicate act because plaintiff fails to plead fraud with particularity.**

Mail fraud and wire fraud both qualify as predicate acts under RICO. 18 U.S.C. § 1961(1). "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that

scheme." *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir.), *abrogation on other grounds recognized by* 657 F.3d 1146 (2008). Plaintiff alleges that defendants violated RICO by committing tax fraud and evasion, conducting such activities through a pattern of mail and wire fraud. (Compl. ¶¶ 174, 227.)

The heightened pleading requirements under Fed. R. Civ. P. 9(b) apply to RICO claims that involve allegations of fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-82 (11th Cir.), *aff'd*, 116 F.3d 1364 (11th Cir. 1997). To meet Rule 9(b)'s pleading requirement, a plaintiff must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the defendants gained by the alleged fraud." *Id.* at 1380-81. Claims fall short of this standard when a plaintiff has simply "'lumped together'" all the defendants in its allegation of fraud. *Id.* at 1381 (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)). When a case involves multiple defendants, "'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Vicom*, 20 F.3d at 778 (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

Plaintiff claims tax fraud dating back over the "past 30 years and specifically the last 5 years." Compl. ¶ 81.) Plaintiff then alleges that defendants committed tax evasion on their IRS 990s for the years 2007-2011. (Compl. ¶ 182.) With the exception of the IRS 990 for 2011, however, plaintiff fails to point to specific defendants responsible for specific fraudulent statements or omissions. Instead, plaintiff makes a general claim that "fraudulently and materially false" filings for 2007-2011 were "submitted to the IRS via United States mail."

(Compl. ¶ 184.) Plaintiff's complaint fails to inform each defendant of the nature and extent of his alleged participation in the overall fraud that plaintiff complains of. Accordingly, plaintiff's broad claims for tax fraud fall short of Rule 9(b)'s pleading standard and must be dismissed.

### 4. Even if plaintiff had pleaded fraud with sufficient particularity, plaintiff's allegations of mail and wire fraud alone do not confer standing on plaintiff to assert a RICO claim.

Even if plaintiff had pleaded fraud with sufficient particularity, plaintiff does not have standing to bring a RICO claim based on predicate acts of mail and wire fraud. As described above, causation is crucial to a RICO claim, and the U.S. Supreme Court has held that in order to satisfy the element of causation, a plaintiff must allege that the defendant's RICO violation is both the actual and proximate cause of the alleged injury. *Anza*, 547 U.S. at 457; *Holmes*, 503 U.S. at 267-68. Plaintiff claims that as a result of defendants' activities, plaintiff's employment and livelihood have been "irreparably damaged." (Compl. ¶¶211, 216.).

Plaintiff's complaint fails to demonstrate just how his employment and livelihood were directly damaged by defendants' alleged tax fraud and evasion alone. If anything, the government suffers direct harm from tax evasion, not plaintiff. A RICO plaintiff who complains "of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts" may not recover under the RICO statute. *Holmes*, 503 U.S. at 268-69. Furthermore, the U.S. Supreme Court has rejected the argument that a defendant's alleged tax evasion confers RICO standing, even on a plaintiff arguing harm on the basis that he is a taxpayer. *Anza*, 547 U.S. at 457-58 ("[Plaintiff's] theory is that [defendants] harmed it by defrauding the New York tax authority and using the proceeds from the fraud to offer lower prices designed to attract more customers. The RICO violation alleged by [plaintiff] is that the [individual defendants]

conducted [the corporate defendant's] affairs through a pattern of mail fraud and wire fraud. The direct victim of this conduct was the State of New York, not [plaintiff]. It was the State that . . . lost tax revenue as a result."). Even if defendants evaded taxes or committed tax fraud, which they did not, the state suffers the direct injury from such actions; any injury that plaintiff suffers is indirect, and plaintiff cannot show causation under RICO.

In his complaint, plaintiff attempts to link tax evasion and his injury with the commission of another predicate act, retaliation of a witness in violation of 18 U.S.C. § 1513(e). In some cases, a plaintiff who adequately pleads mail or wire fraud and retaliation against a witness in violation of 18 U.S.C. § 1513(e) may be able to satisfy RICO's causation requirement. *See DeGuelle v. Camilli*, 664 F.3d 192 (7th Cir. 2011). As previously explained, however, 18 U.S.C. § 1513(e) does not apply to plaintiff.

Because plaintiff does not allege facts sufficient to establish defendants' commission of at least two predicate acts, plaintiff's RICO claim cannot stand, and the court should dismiss it.

### B. Plaintiff's Criminal Claims Must Be Dismissed Because Plaintiff Does Not Have Standing.

In addition to his RICO claim, plaintiff brings the alleged violations of 18 U.S.C. §§ 1341, 1343, and 1513 as separate and distinct claims. Each of these statutes delineates federal crimes that plaintiff does not have standing to pursue. The government, not private citizens, prosecutes crimes. *Williams v. Univ. of Ala. Hosp. at Birmingham*, 353 Fed. App'x. 397, 398 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 1711 (2010); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Because plaintiff lacks standing to prosecute defendants for federal crimes, the court should dismiss his criminal claims.

### C. Plaintiff's Breach-of-Contract Claims Must Be Dismissed Because Plaintiff Has Not Shown Damages Resulting From a Breach of the Bylaws or Breach of the Code of Ethics.

To bring a claim for breach of contract under Florida law, a plaintiff must show the existence of: (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.* 175 F.3d 913, 914 (11th Cir. 1999).

Plaintiff brings breach-of-contract claims against defendants based on plaintiff's allegations that defendants failed to comply with provisions of the Bylaws of the National Association of Process Servers (the "Bylaws") and the Code of Ethics of the National Association of Process Servers (the "Code of Ethics"). Plaintiff claims that defendants failed to send out notice to members of NAPPS's board of directors before holding a special meeting on January 4, 2013, as required by the Bylaws. (Compl. ¶ 111.) Plaintiff also claims that defendants' alleged breach resulted in damages to plaintiff in the form of lost wages and benefits, attorney fees, and other consequential damages. (Compl. ¶ 236.) Nowhere, however, does plaintiff's complaint allege damages actually flowing from the claimed breach; plaintiff does not allege facts to show that failure to give notice caused his damages. If anything, plaintiff's complaint shows that NAPPS's board of directors actually complied with the Bylaws—the board held the January 4, 2013, meeting that plaintiff complains of in accordance with the disciplinary procedures outlined in the Bylaws. Accordingly, plaintiff has failed to plead facts sufficient to show that defendants breached a contract with plaintiff, and plaintiff's claim for breach of contract with respect to the Bylaws should be dismissed.

Plaintiff also claims that defendants breached the Code of Ethics by "retaliating against [p]laintiff" and "terminating him for reporting unlawful and unethical conduct." (Compl. ¶ 235.)

Plaintiff claims that as a result, he incurred damages in the form of lost wages and benefits, attorney fees, and other consequential damages. (Compl. ¶ 236.) Plaintiff's complaint does not venture beyond this conclusory allegation to explain exactly how defendants' alleged conduct breaches the Code of Ethics; nor does plaintiff specify which provision of the Code of Ethics defendants breached. Plaintiff has failed to allege facts to support his claim that defendants breached the contract. Therefore, plaintiff's claim for breach of contract under the Code of Ethics should also be dismissed.

### D. Plaintiff's Wrongful-Termination Claim Is Unsupported and Should Be Dismissed.

Plaintiff alleges that defendants wrongfully terminated him "from his livelihood" in violation of "the public policy" of the United States of America, and that as a result, plaintiff incurred damages including lost wages and benefits, attorney fees, and other consequential damages. (Compl. ¶¶ 238-239). Plaintiff's claim cannot stand. As a preliminary matter, plaintiff was never a NAPPS employee; therefore, plaintiff was never actually terminated from a position. Furthermore, plaintiff does not state the basis for his wrongful termination, such as breach of contract or violation of a particular statute. Instead, plaintiff claims that he was terminated in violation of public policy. Even if plaintiff was a NAPPS employee, Florida courts have declined to recognize a cause of action for wrongful termination based on public policy concerns. *See Weld v. Se. Cos.*, 10 F. Supp. 2d 1318, 1322 (M.D. Fla. 1998); *DeMarco v. Publix Super Mkts., Inc.*, 384 So. 2d 1253, 1253-54 (Fla. 1980); *Ochab v. Morrison, Inc.*, 517 So. 2d 763, 763-64 (Fla. 2d DCA 1987). Plaintiff's claim for wrongful termination should be dismissed.

> E. **Plaintiff's Defamation Claim Should Be Dismissed Because Plaintiff Does Not Actually Allege That Defendants Made Any Defamatory Statements About Plaintiff.**

Under Florida law, in order to bring a claim for defamation, a plaintiff must allege that "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999).

Plaintiff claims that defendants "unlawfully, intentionally and with malice defamed the [p]laintiff after his termination by publishing his name to the NAPPS membership . . . thereby excluding him from the trade . . . and affecting plaintiff [*sic*] livelihood." (Compl. ¶ 241.) Nowhere in plaintiff's complaint does plaintiff allege that defendants made a false statement about him, the first required element for proving defamation. Plaintiff simply alleges that defendants "defamed" him by revoking his membership in NAPPS. Without more (specifically, facts supporting publication of a false statement), plaintiff cannot bring a successful defamation claim. Because plaintiff has failed to allege facts to support his claim for defamation, the claim should be dismissed.

## V. CONCLUSION

Plaintiff uses his complaint primarily as an outlet to air his grievances against NAPPS, failing to allege facts sufficient to support his various claims. Rather than pleading actual facts, plaintiff fabricates theories of tax fraud and evasion that are not conceivable, much less plausible. Accordingly, defendants request that the court grant their motion to dismiss plaintiff's complaint in its entirety.

/s/Amanda Arnold Sansone
Thomas J. Roehn
Florida Bar No. 183685
Amanda Arnold Sansone
Florida Bar No: 587311
**CARLTON FIELDS, PA**
4221 West Boy Scout Blvd.; Suite 1000
Tampa, FL  33607-5780
(813) 227-3000 – Telephone
(813) 229-4133 – Facsimile
troehn@carltonfields.com
asansone@carltonfields.com

Christopher A. Rycewicz (pro hac vice pending)
OSB No. 862755
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204-3699
(503) 224-5858 - Telephone
(503) 224-0155 – Facsimile
Christopher.rycewicz@millernash.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Richard Barton Akin, II, Henderson, Franklin, Starnes & Holt, P.A. (Richard.akin@henlaw.com). Further, I certify that that I emailed and mailed a copy of the foregoing to non-CM/ECF participant Randy A. Scott, 343 Hazel Wood Ave., Lehigh Acres, Florida 33936 (randy@allclaimsprocess.com and randyscott@randyscott.us).

**/s/Amanda Arnold Sansone**
Attorney