EXHIBIT O

Randy A Scott
343 Hazelwood Ave S
Lehigh Acres, Florida
33936

February 23, 2013

Christopher A Rysewicz
MILLER NASH LLP
3400 US Bancorp Tower
111 SW 5th avenue
Portland, Oregon 97204-3699
Email only: Christopher.Rycewicz@MillerNash.com
Email only: Cheri.Pearson@MillerNash.com

Re: National Association of Professional Process Servers

Dear Mr. Christopher A Rysewicz:

I understand your office represents the board and the administrator for the National Association of Professional Process Servers ("NAPPS"). I appreciate the acknowledgement of my e-mail correspondence dated February 19, 2013 and February 20, 2013. I understand that NAPPS board terminated my membership as retaliation against me for making law enforcement complaints regarding violation of IRS laws and antitrust concerns. They introduced that and admitted it in the complaint leading to my expulsion. The board and the administrator couched it as a violation of the NAPPS Code of Ethics.

You further state the "The Board has no interest in communicating with you directly. Thus, please do not send correspondence directly to the NAPPS Board. The Board expressly requests that you communicate through me." The nonprofit association board, the administrator, and the leaders you represent are a trade association organized under the

EXHIBIT D

authority of various laws not limited to the IRS code. Since their alleged purposes are directly related to the entire trade of process serving and I derived my livelihood in the trade of process serving in the United States I cannot honor your request to not send information to them as Arizona law allows the supplying of knowledge to the board.

Specifically Arizona law states:

> 10-3830 General standards for directors
>
> B. In discharging duties, a director is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, if prepared or presented by any of the following:
>
> 1. One or more officers or employees of the corporation whom the director reasonably believes are reliable and competent in the matters presented.
>
> 2. Legal counsel, public accountants or other person as to matters the director reasonably believes are within the person's professional or expert competence.
>
> 3. A committee of or appointed by the board of directors of which the director is not a member if the director reasonably believes the committee merits confidence.
>
> 4. In the case of corporations organized for religious purposes, religious authorities and ministers, priests, rabbis or other persons whose position or duties in the religious organization the director believes justify reliance and confidence and whom the director believes to be reliable and competent in the matters presented.
>
> C. A director is not acting in good faith if the director <u>has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection B unwarranted</u>. (emphasis added)

It is not my position that the board has an opportunity to remain ignorant of the knowledge that makes their decision(s) unwarranted and will continue to supply contradicting information to the advice it relies on.

You indicate in your letter that you do not intend to engage in a detailed factual discussion or debate with me concerning my specific statements that constitute violation of my legal obligations.

EXHIBIT D

Without specific knowledge and support of what you consider violative you are foreclosing any opportunity for me to remove those portions. What you are proposing is all communications are improper. Again, as previously communicated to you, I will remove what you support with specifics. Absence specifics and support I have no clue of what lawful concerns you have. I cannot take your blanket request to cease all activity your general position desires.

My past statements do speak for themselves as they are based on and supported with facts available at the time of publication. You continue to demand that I refrain from slandering and/or placing in a false light NAPPS, its members, the members of the NAPPS Board, or the NAPPS administrator. Be advised I am not slandering anyone. The basis of my communications is on a reasonable belief of all material I have diligently studied. I take note of the special new entry in this communication from you on February 22, 2013 called NAPPS members. I believe the information I share is to the benefit of NAPPS members specifically and all members in the trade of process servers generally and legislators, regulators and rule makers additionally. I do not believe members specifically or implicitly benefit from your counsel. I believe your counsel is about the board generally and the administrator specifically.

If you have additional material to make the facts I relied on to be wrong please present them to me so I may further consider your proposal and remove such material as warranted.

You further demand that I immediately halt further statements that question the veracity and motives of these individuals. I am not sure what specifics you are referring to as

EXHIBIT D

the term veracity rests on facts and motives rest on interpretation of facts. So again, as I have reasonably requested before, please advise what is published that is incorrect and I will remove it. Please be specific with support so I may further understand your request and remove the items or change the communication methods.

In the February 19, 2013 correspondence I indicated I was to remove, and since have removed, the url NAPPS.randyscott.us of which I replaced with http//www.pstrade.us.

You now take offense to my naming convention of my email and I disagree the content of the email would reflect any confusion you suggest. I have shown a desire to work through these factual disputes. I send another olive branch and I will remove napps@randyscott.us from future emails. I ask that you and the board begin to move in those same good faith efforts and begin to address what the specifics are with authorities for all your requests. If you need to supply information unavailable to me, feel free to do that too.

There were no promises made in my February 19, 2013 correspondence. The proposal was that upon specific statements you allege are inaccurate you would supply me with substantiated reasons with support why my reasonable belief(s), interpretation(s), and/or opinion(s) based on the available facts are inaccurate. That upon proper support from you I will cease the activity associated with that specific communication item.

You further state in you most recent correspondence of February 22, 2013 "..Earlier today, you sent an e-mail in which you misrepresent the terms of the Administrator's contract. Indeed, your scurrilous statements are patently false and harmful to NAPPS, its Board, and Administrator." You specifically identified the singular issue of the administrator's contract. I contend, upon proper support appended, that my comments were

EXHIBIT D

accurate. I also have personal knowledge in a communication with the administrator via telephonically that the basis of his contract is as a percentage of revenue. The appended minutes to this correspondence do not contradict that percentage of revenue basis the administrator relies upon. Gary Crowe on November 17, 2013 in Louisiana "explained the length and increase of the contract". In the role as administrator, and the presenter and the benefactor of a substantial contract, the board had no access to independent authority to determine the veracity of the terms. The IRS has clear rules of these types of contracts and the board, as reflected in the minutes, was unauthorized to consider any comparable data. In that paragraph, you identified the specific singular issue of the administrator contract. You then went on to a general statement demand that false statements (plural) retracted. The facts associated with the most current administrator contract are as follows:

1. The administrator prepares the data for the IRS 990 and in it he includes branch office revenue for the year 2011 as non taxable in the amount of $210,245.00
2. Branch office revenue is Unrelated Business Tax Income (UBIT) and taxable at 41.6%
3. The administrator reports it as program services, this causes taxes to be under the radar, and the amount of $87,461.92 taxes not paid.
4. The administrator offers his contract based on total revenue estimated at about 30% of total revenue. Total revenue now includes the unpaid taxes of $87,461.92
5. $87,461.92 included in the 30% contract calculation that increases the contract by $26,238.57 annually.

If there is something in the above calculations inaccurate, please advise what that is.

I understand that the administrator is not pleased with this truthful discussion of information. NAPPS is about a trade of process servers. One person should not direct this pattern of exclusion and secret deals to infer upon a trade or an association of members. We have a factual quagmire of who represents the best interests of the trade of process servers. I

believe my publications can do great works to bring to the trade of process severs information that each can use to direct the future of the trade of process serving. There is a difference between members of the trade of process serving and members of a trade association of process serving. That distinction is evident in NAPPS.

The members of NAPPS do not benefit. This personal use of association funds is benefiting a few. By silencing or attempting to silence reasonable and fact based inquiries and communications into the leadership the members of NAPPS and the members of the trade of process servers lose. Those who propose new laws and new regulations and are required to file factual reports to government authorities have no right to silence opposition to its proposals or filings the government considers. NAPPS also is an IRS tax-exempt entity. With that recognition and privilege comes an obligations to all US citizens whether they are in the in the trade of process serving, a member of an association or not, including me.

Legislators, regulators, and law enforcement authorities to assist in determining the veracity of their rule making or regulatory authority are fundamentally using my website and emails. NAPPS has positioned itself in this area too.

Therefore if you change your direction and become willing to "engage in a detailed factual discussion" to support your request I will further consider your request(s). If you decide to continue, being unwilling to support your position it is with deep regret.

I deny every allegation you made in your letter and absence any specific itemization of communications and your detailed support to the legal obligation you impugn upon me I cannot accept your position to close down all communications.

EXHIBIT D

It is my hope you desire to be more cooperative and specific with your allegations so I may reconsider my authority and lawful obligations and properly respond to your requests.

I do this to support my fellow professional process servers in the trade. I do this by providing them *relevant* information to direct the trade of professional process servers in the Unites States of America. I do this without fear of reprisal economically or personally. I do this to protect their public participation regarding same and not allow the actions of a few to chill their participation in the trade.


Sincerely,

Randy Scott

Randy A Scott
A Professional Process Server


Appendix

Crowes Contract

EXHIBIT D

**New Business** *(this New Business item was presented now as Bob Musser has an early flight out of New Orleans and would like to be present during the voting on the Administrator Contract)*

- Administrator's Contract: Gary Crowe presented the Administrator's Contract starting January 1, 2013. He explained the length and increase of the contract. The basic contract is for 5 years with a 10% increase for 3 years and an additional 3% for the remaining 2 years. Bob Musser reiterated the increase and stated he believes only asking for a 10% increase is "stupid" with the amount of new members we have had since this Administrator began 6 years ago and the amount of work that go in to running this Association.

    Motion by Bob Musser to accept the proposed Administrator's Contract as submitted, 2rd by Jillina Kwiatkowski

    Vote: Motion passes 5-1, 1 abstention (Steve Glenn would like to go on record stating that his abstention is not a lack of confidence, but would like to have had more time to review the verbiage)