FILED

2013 AUG 21  PM 2:00

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| Randy A Scott, propria persona ) | Case No.: 2:13-CV-157-FTM-38-DNF |
| Plaintiff. ) | |
| vs. ) | |
| NATIONAL ASSOCIATION OF ) PROFESSIONAL PROCESS SERVERS, etal Defendant(s) | |

### Judicial NOTICE to respond to docket entry #97

1. Judicial Notice of docket entry # 97 Motion for Extension of Time to Amend is requested.

2. On August 2, 2013 plaintiff requested the court to extend the time to amend complaint until November 9, 2013

3. Defendants put forward no position in support or denial of the motion.

4. Plaintiff now petitions the court to extend the time to file an amended complaint according to the motion that went unopposed.

5. Extension requested in the unopposed motion until November 9, 2013

6. Defendants YELLON and CROWE have supplied an interpretation of this courts actions in writing to the 2200 members of the National Association of Professional Process Servers via email. (Exhibit A) The defendants have through their agent, and defendant Larry Yellon given to James E Lowery aka Mike Murphy to place this edict via a public accessible

scribd account citing this courts actions to infer a support of the underlying merits this court has never addressed. (exhibit B)

7. The interpretation published appears to refute the movants positions in the accepted motions to dismiss and shows the defendants in fact understand the pleadings cause of action in all its forms. However their conclusion of their facts are disputed. that is why we need courts, especially the employee vs livelihood theory under Sarbanes Oxley cross over to Racketeering.

8. The defendant's conclusion of the factual matter they properly identified in the attached exhibit A are disputed. None the less these defendant authorized publications shows the defendants always understood the brevity of the pleading.

9. The defendants will be publishing the same material in their general subscription trade Publication called the Docket Sheet in September. Exhibit C

10. For the efficiency of the court and in the pursuit of justice plaintiff respectfully requests this court weighs the merits of the facts and does not allow the matter to be closed without a full and just review. Exhibit D

11. Plaintiff moves this court to respond to the motion for extension of time to amend as requested unopposed reflected in docketed #97.

Dated this 21th day of August, 2013

_____
Randy Scott
343 Hazelwood Ave S
Lehigh Acres, Fl 33936
239-300-7007

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2013, I electronically mailed the foregoing To Richard Barton Akin. II. Henderson, Franklin, Starnes & Holt, P.A. (richard.akin@henlaw.com), Christopher A. Rycewicz christopher.rycewicz@millernash.com, Thomas J. Roehn at troehn@carltonfields.com and . Amanda Arnold Sansone to asansone@carltonfields.com. Further, I certify not being considered by the court to be an eligible participant in the CM/ECF system I must wait and appear at the Middle District of Florida court house at the next earliest hour of their opening and physically file this response for the court to be fully informed.

Randy A Scott
343 Hazelwood Ave S
Lehigh Acres, Florida 33936
239-300-7007

Email not displaying correctly? View in your browser.

EXHIBIT A



# Randy A. Scott vs. NAPPS
*Anatomy of a Lawsuit: Fiction vs. Fact*

Expelled NAPPS member **Randy A. Scott**, who operates **All Claims Process, LLC**, located in Lehigh Acres, Florida, filed a federal lawsuit on March 4, 2013, against NAPPS, FAPPS, many board members, the administrator and the Chair of the A&G Committee that presided over his expulsion proceedings. It is case number 2-13-cv-157-FtM-29DNF and it was filed in USDC for the Middle District of Florida. On July 12, 2013 USDC Judge Sheri Polster Chappell granted defendants' Motion to Dismiss.

Until Judge Chappell dismissed Scott's complaint, the thought of providing Scott with this forum to publicly proclaim his outrageously false accusations was quickly dismissed by our Board of Directors. Now that the federal court has spoken, quickly dismissing Scott's complaint, the slander spewed by Scott in his relentless Facebook posts, e-mails and on his website has been shown to be what it in fact is – a desperate attempt to damage and embarrass NAPPS and its leadership. Scott did not limit his defamation campaign to only NAPPS members, but to anyone who would listen. Now is the time to fulfill our responsibility to our members, all those associated with the profession, and the legal community, by providing the truth. Before addressing Scott's slanderous allegations, made through the internet, electronic communications, complaints to federal and state authorities and his lawsuit, it is important that everyone understand Scott's background.

The Plaintiff:
**Randy Allen Scott**, also known as **Randall Scott Dienethal**, filed for bankruptcy protection on multiple occasions (under each name), the most recent being in 2007 where he requested that nearly $200,000 in personal debt be discharged against his $1250 per month income. While listing 54 unsecured creditors, he told the court that he was an unemployed student and that he did not file tax returns.

Almost immediately after resigning his membership in the Florida Association of Professional Process Servers (for unknown reasons), Randy A. Scott joined NAPPS in 2009. On July 4, 2012, Scott created an association called the Independent Professional Process Servers of America (IPPSOA). In November, 2012, Scott sent a barrage of emails to the entire membership which contained a host of false claims against various board members, committee chairs and the administrator. The common thread with each of his defamatory emails is that they contained a solicitation for the recipient to join his association, the IPPSOA, where Scott listed himself as the Administrator. As a result, Larry Yellon (the then current NAPPS President) filed a grievance against Scott, alleging Scott's false allegations were in violation of our Code of Ethics, Numbers 1 and 5. On January 7, 2013, the IPPSOA was voluntarily dissolved. At that time it had no known board of directors or listed bylaws. It appeared to be a one man operation.

In December, 2012, prior to his expulsion from NAPPS, Scott sent an email blast to all NAPPS members proclaiming **"I am writing to let you know I have closed my business,"** followed by a request for 500 members to send him $100 each to fund his continued slanderous attacks.

On January 4, 2013, after then President Yellon's grievance was fully processed in accordance with NAPPS grievance procedure contained in Policy No. 4 of our Policy Manual, Scott's membership was revoked (see Jan-Feb, 2013 issue of *The Docket Sheet*). Scott requested reconsideration and appeared in person at the February board meeting. When asked if he would discontinue sending his defamatory emails to the membership if he were allowed to retain his membership he said he would not stop. His request for reconsideration was denied.

On March 4, 2013, Scott filed the federal lawsuit. On March 19, 2013, Scott filed an Affidavit of Indigency with the court, claiming a current income of $60 per week. His request that the affidavit be sealed was denied, thereby making it a public document. Two motions by Scott seeking the Appointment of Counsel, to have the government provide him with a cost-free attorney to pursue his lawsuit were similarly denied.

EXHIBIT A

### The Plaintiff's Goals:

Randy A. Scott has not made a secret of the fact that he does not have any financial resources. While claiming to the federal court that he has earnings of $60 per week, he claims in various postings on the internet (emails and Facebook) that he is losing $7,500 per month by having his membership in NAPPS revoked. His belief that the NAPPS website should be made available to all process servers, not just our members, is based on his stated claim that a process server cannot survive without being listed on the site. Scott justifies this claim based on his personal, albeit incorrect, interpretation of antitrust laws.

Despite the fact that the NAPPS leadership never publicly engaged or responded to his relentless defamation campaign, and the fact that he had publicly announced he closed his business prior to his expulsion, Scott claimed in his lawsuit that he sustained damages including: "*pain and suffering; emotional distress; humiliation, embarrassment and degradation; loss in wages and benefits; loss of career prospects and job opportunities; and continuing unemployment.*"

His prayer for relief demanded "*A full make-whole remedy including but not limited to lost income, lost future income, consequential and punitive damages, and pre-judgment and post-judgment interest; compensatory damages in an amount to be determined at trial to compensate Plaintiff for the damage to reputation, loss of career, humiliation, anguish and emotional distress.*"

Scott's filing of the lawsuit did not cause him to cease or slow down his efforts to damage the Association and those NAPPS officers and directors who voted to revoke his membership. Nor were his efforts directed only to NAPPS members and other process servers. NAPPS has spent countless hours and substantial resources establishing a relationship with the National Sheriffs' Association that allowed our NAPPS leadership to motivate the sheriffs toward consideration of outsourcing service of process to the private sector. During the NSA's Annual Conference in June, 2013, Scott sent a letter to the NSA leadership repeating his slanderous allegations. He also claimed to have hired someone off of Craigslist to hand out flyers to attendees, directing the sheriffs to his website where his defamatory remarks are most serious. These actions by Scott leave no doubt as to his true motivations. He has been out to cause as much damage to the reputation of NAPPS and its membership as possible.

### The Allegations:

A common thread throughout Scott's federal complaint is that his basis for his many allegations is "upon information and belief." Thus, he essentially admits that his supported "facts" are not actual, but based only on information and belief. This was noted by the judge in her Order of Dismissal. This has also been a common theme in all the defamatory allegations Scott made by e-mails and on his website. In Scott's case, he engineered "facts" to fit the allegations that were simply a figment of his imagination.

### Fraud and Tax Evasion

Through the rambling 56-page complaint, which consisted entirely of unsupported and outrageous false allegations far too numerous to address in this article, Scott alleged that NAPPS (and defendants) misused Association funds, evaded taxes and used nonprofit resources in a manner that is inconsistent with the guidelines of the Internal Revenue Service. Specifically, he claimed that "over the past 30 years and specifically the last 5 years NAPPS has materially misstated" advertising income and evaded taxes. In an attempt to support his claim, Scott made the following specific allegations:

--**NAPPS misstated income advertising "by combining improperly as program services revenue, member revenue or other various improper entries over time," and that over $100,000 in advertising revenue has not been reported."**

--**NAPPS's administrator "misstates the total revenue and evades 80K in taxes."**

--**NAPPS program services revenue contains advertising revenue in an attempt to fraudulently evade taxes and NAPPS misreported "Unrelated Business Taxable Income...of over $500,000 over the past 3 years or a potential tax avoidance of over $200,000."**

What Scott is claiming is that all revenues NAPPS received for BRANCH OFFICE LISTINGS should be considered advertising income, and thus taxed at a rate of 41%. He also claims that administrator (me), "**supplies, prepares, and otherwise exclusively directs the completion of the IRS forms**" and that "**By not paying taxes NAPPS artificially and illegally increases total revenue that is then computed into CROWE'S contract for his personal gain related to the evasion of taxes CROWE himself prepares.**"

Contrary to Scott's assertion, NAPPS pays a team of very competent professional CPA's specializing

EXHIBIT A

in non-profit tax law to not only prepare ALL of the association's tax forms, but also to provide ongoing advice on what is proper and in conformity with existing tax laws. Our CPA's are not directed on how to classify revenues. Attached is a letter from Jason Orme, the association's CPA, that provides his professional analysis of Scott's tax evasion claim and also Scott's odd assertion that over $500,000 miraculously appeared out of nowhere on the tax filings in 2009 and 2010. Scott's claims, made on countless occasions, can only be a result of either his inability to understand, or his intentional distortion of the facts and the law.

Administrative Contract
At the heart of Scott's claim is that I "chaired" the ad hoc committee to establish a policy for branch office listings. Scott's allegation goes like this: the committee would allow me to create a policy that would benefit me by allowing more branch office listings. Additional listings would increase the revenues, thereby increasing my income under my contract with NAPPS because – as he erroneously continued to assert – the contract is percentage based. Note however, there are three fact based inconsistencies with this scenario: 1) I was never the chair, Jack Lipmann was appointed Chair and was always present; 2) the policy that was adopted (and that I supported) actually REDUCED the number of branch offices; and 3) my contract is not, and never has been, based on a percentage of the NAPPS annual budget (a fact that Scott knew full well based on a telephone conversation he had with me).

Scott sent out an email blast in November of 2012, just days after the contract was reviewed and approved by the board, stating that the contract was $210,000 annually for five years. After having his membership revoked, he has sent out countless email blasts, posted on his website and claimed in this lawsuit that my 5-year contract is for $1,200,000.00, a far cry from the previous number he reported. The actual numbers are $208,725.00 for three years, followed by $214,986.75 for two years, for a total of $1,056,148.50 over the 5-year period. So, one might question why Scott, after being informed of the actual numbers in November, chose to intentionally misstate the figure over and over again, by nearly $150,000 after he was expelled.

As I explained in great detail to the attendees at the 2012 annual conference in Boston (where Scott was also present), the Administrator's Contract is not my personal salary and I am not an employee of NAPPS as Scott continues to assert. The contract pays for me, two full-time employees that work only on NAPPS business; office space, computers, telephone system, office equipment, supplies, technical support, etc. Scott, while knowing these facts, continues to compare the amount of the NAPPS contract against the individual salaries received by the executive directors of other non-profit organizations.

Defamation
Scott claimed, as stated above, that he suffered *"pain and suffering; emotional distress; humiliation, embarrassment and degradation; loss in wages and benefits; loss of career prospects and job opportunities; and continuing unemployment."* However, in his claim for defamation, he states only that NAPPS published his membership revocation in the newsletter. Nowhere in the complaint does Scott allege that defendants ever made a false statement about him (a required element for proving defamation).

Wrongful Termination
Scott claimed Wrongful Termination because his membership was revoked. This claim can only be used when an employee is wrongfully terminated. Randy Scott was never an employee of NAPPS.

Sarbanes-Oxley Act, Retaliating Against a Witness
Scott claimed, and continues to claim, that he was expelled from NAPPS due to his communications with the IRS concerning our tax filings (he being the witness against NAPPS). It should be noted that Scott has sent letters to the Internal Revenue Service, United States Department of Justice and the Oregon Department of Justice, requesting an investigation of NAPPS. NAPPS has never been contacted by any government agency regarding Scott's claims or for any impropriety whatsoever. The leaders of the Association have never second-guessed the professionals NAPPS uses to perform its various technical functions. This includes the professional team of CPA's specializing in non-profit tax law that prepares the Association's tax forms each year.

Frauds and Swindles
Scott claimed the treasurer and I prepared the "fraudulent IRS 990's" (tax forms) and mailed them to the IRS. See explanation above.

Additional Claims Not In Lawsuit:
Scott has made many untrue claims both before and after he filed the lawsuit against NAPPS. The following are several examples. They are statements made by Scott in email blasts to the entire membership. They are followed by supported facts:

November 12, 2012, Scott writes: **"Look at the 2009 990's it has a 160K surplus...it is like**

EXHIBIT A

extra money just appeared"

April 21, 2013, Scott writes "Now it is clearer to me than ever. That Alan H Crowe and associates have been in charge of many events that are illegal and fraudulent and based on available financial records even includes over $250,000.00 of branch office money missing since at least 2004."

July 25, 2013, Scott writes "What didn't Gary Crowe tell NAPPS members about the gift of found money of $350,000.00 reported to the IRS in 2010? Reasonable people conclude is there is something fishy with the reporting of these funds."

For one who had been a member for just three years to question my integrity, after I have spent my entire adult life working on behalf of this Association, is both contemptible and sickening. And, Scott's basing such statements solely on his unprofessional and uninformed interpretation of the bulk numbers on the form 990 is saddening. Instead of attempting to explain how anyone could come to Scott's conclusions, I will refer members to various NAPPS publications; wherein it was widely reported the Association hired the professional accounting firm of Talbot, Korvola and Warwick to perform a detailed review of accounting records, investment records and stored documents for years 2008, 2009 and 2010. After countless hours of time spent with their accountants in the NAPPS Administrative Office going over physical records and viewing the files on our computers, no accounting discrepancies were found. This is yet another clear example that facts do not play a role in Scott's agenda, leading to the reasonable and unavoidable conclusion that Scott's motivation is to destroy the Association, its leadership and my reputation and livelihood.

April 27, 2013, Scott writes "While you were sleeping NAPPS leaders stole from the membership"

While this was the subject line of an email blast, Scott never addresses how the leaders supposedly stole from the membership; all it did was direct the reader to his website.

April 27, 2013, Scott writes "[NAPPS board member] Steve Glenn files AG complaint because process server would not lie and indicate the process contained paper that were not there" (sic).

This is yet another example of Scott fabricating his own NAPPS scandal. Not true. Not only did Steve Glenn not file a grievance against this unnamed member, Glenn has never filed a grievance since he's been a NAPPS member.

July 17, 2013, Scott writes "MITCHELL RUBIN, A NAPPS FOUNDER HEADING TO TRIAL" rules Judge William Wenner" (sic).

This is a classic example of Scott fabricating his own NAPPS "scandal." Not true. The judge never said this. What was reported was "[the judge] told each of the six (defendants) they were headed for trial on all charges."

Contrary to what Scott continues to tout is that Mitchell Rubin **is not a founding member of NAPPS!** He did not join NAPPS until 1984, two years after NAPPS was formed, and he relinquished his membership when he did not pay his dues in 2004. In addition, he has not been affiliated with any NAPPS member for more than 2 years.

June 7, 2013, Scott writes (to the President of the National Sheriff's Association) "In 1999 in the State of New York in a criminal indictment, alleging sewer service was brought against NAPPS immediate past president [Yellon]. In it he pled guilty to notary fraud" (sic).

August 10, 2013, Scott writes "Did you know under the rules of the DCA that Larry "Norman" Yellon and B & R Services would be ineligible to obtain a license. New York law states a principal or applicant cannot have any convictions relating to the process serving industry and/or crimes of moral turpitude. How can these types be leaders of an industry propagating laws upon those who are already honest" (sic).

These statements are outright slanderous and blatant fabrications. Both in fact are eligible for licenses. Larry Yellon has NEVER been convicted of any crime whatsoever. What Scott has erroneously claimed over and over is that Larry Yellon was convicted of notary fraud. Not true. Yellon was fined and cited for a violation over a decade ago for using an expired notary stamp on three affidavits. There was no fraud and no sewer service, only an expired stamp which did not even negate the affidavits on which it was used. Scott bases his "facts" on an old newspaper article written by an over-zealous reporter that contained several factual errors, for which Yellon sued the newspaper. Scott, while knowing the truth behind the article, continues to post it and disseminate

EXHIBIT A

it whenever possible.

In addition, Fred Blum – the sole owner of B&R Services – and Sue Collins (both past Presidents of NAPPS and frequent targets of Scott's attacks) also have NEVER been convicted of any crime whatsoever.

Summary:
As any long-term member of NAPPS realizes, this type of article would not normally be sent to the membership or be included in *The Docket Sheet*. However, the time has come to respond to the outlandish ravings of an expelled member who has been spewing for many months that NAPPS is a corrupt organization whose leadership has engaged in self-dealing. Nothing could be further from the truth. We have been fortunate over the years to have elected a leadership comprised of members who have been selfless in devoting their time, money and energy to the betterment of the Association and the profession. I am honored to have had the opportunity over many years now to work with these professionals.

It is laughable that Scott claimed "standing" to make his federal complaint by alleging that the Association was fraudulently evading taxes and, as a taxpayer, Scott is a victim of the alleged fraud. Yet, he admitted he does not even file tax returns, much less pay taxes. This, combined with his asking a bankruptcy court to discharge well over $200,000.00 in personal debt; his request that the court appoint a government paid attorney to represent him; that all Scott's court fees be paid by the government; and, that NAPPS should pay the costs of having NAPPS and the named defendants served with the complaint, makes it clear who the real victims are. They are our membership, leadership and committee chairs that give their time and money for the benefit of us all. This, while enduring Scott's vindictive defamation campaign for well over a year.

Scott claims to be a tax paying "whistleblower" with regard to our alleged wrongdoing and says he wants to bring "transparency" and right the wrongs of our profession. When viewing his actions it is obvious that his true goal is to destroy the Association and the profession. He has done NOTHING for the betterment of the profession.

I thank the membership for their patience and continued support of this Association, its Board of Directors and the Administrative Office.

Respectfully,

Gary A. Crowe
NAPPS Administrator
administrator@napps.org
800-477-8211

© 2013 NAPPS

**Attachments:**
🖉 NAPPS LTR .pdf ( 139K)

Privacy Policy



# EXHIBIT C



**Jim Lowery**
TO ALL GROUP MEMBERS - IMPORTANT:

Today, NAPPS Director Gary Crowe, wrote an article which appeared in the NAPPS newsletter. I would like to share that article with you now, but before I do, I want to thank each of you for your support and for continuing your membership in this group. Jim.

Randy A. Scott vs. NAPPS...
Continue Reading
Like · Comment · Follow Post · 12 hours ago

👍 2 people like this.


**Larry Yellon** Jim, actually bthis article was sent to each and every NAPPS member(2200). It will be re published in the next Docket Sheet, the NAPPS newsletter. This man has been hell bent on destroying a not for profit trade association that had the temerity to stand up and say, we will not tolerate your vile, vicious and defamatory attacks on both the association and it's board of directors, whose purpose is to enhance the professionalism of process serving and protect our vital interests.
11 hours ago · Like · 👍 2


**Amarillo McClains Civil Process** Gary, thanks for giving attention and time to write this article for those of us that are members. I have received Scott's e-mails and really didn't know what to think because nothing was being said by NAPPS. This helps put my mind at ease as to what's being said and what the truth is. It helps reaffirm my faith in NAPPS and being a member. It's just to bad someone has such a vendetta against an organization and the leaders of it. I hope things start to calm down now that you have informed us as to what's going on. Good luck.
9 hours ago · Like · 👍 1


**Amarillo McClains Civil Process** Jim, I would like to say thank you for posting this article for the NAPPS members to read, I haven't seen it but it's been a big help and eye opener on what's going on. Thanks again!
9 hours ago · Like · 👍 1


**Jim Lowery** The National Association of Professional Process Servers (NAPPS) is a great organization to join. I am retired now, but when I was a member the benefits and rewards was the best. The referral business I received from other process servers was far, far more than the membership dues. NAPPS could not respond to false allegations against them because of pending litigation. They are free to do so not that the suit against them has been dismissed. I congratulate NAPPS, it's board members, and all the members who saw through the BS.
4 hours ago · Like


**Scott MacLean** I am considering joining NAPPS and would only say that responding to false statements often gives the attacker a platform to continue their diatribe from.
3 hours ago via mobile · Like · 👍 1


**Larry Yellon** Scott MacLean, join NAPPS, you won't be sorry. I have never been associated with finer people in my life, especially the leadership, whose altruistic concern is overwhelming. The best way to send a message to a naysayer, is to increase the numbers. If you need a spnsor, let me know.
3 hours ago · Like · 👍 1

Page **10** of **13**

**EXHIBIT C Continued**

 **Jim Lowery** You are right, Scott. The individual concerned is, as I post this, busy slandering me, Larry Yellon, and NAPPS - again! There are a couple of spies in our group who report back to him. I know who they are and am just giving them enough rope to hand themselves when my attorneys are ready to go after them.
3 hours ago · Like

 **Aline Dowd** I have been on NAPPS since 1997. I have invested money on every PPS promotional organization there is..Just testing the waters. But when that phone rings and we ask, "And, from where did you get our name?" They always say, "NAPPS"...so I dropped all the others and stuck with NAPPS. I had a few mishaps with members who where unethical, slackers and some who would not pay. NAPPS took care of them for me. They are like the Mafia of Process servers. 😊
2 hours ago · Edited · Like · 👍 2

 **Scott MacLean** This is good to know as so many orgs over promise and under deliver. I have not joined previously because I have a cery good group of local attorneys that keep me busy and have been serving process for 28 years. We gave a multiple revenue stream approach to business with PI, Bail Bonds, Fugitive Recovery, Federal Security Clearance Investigations and Process Service.
2 hours ago via mobile · Like · 👍 2

 **Scott MacLean** Isn't it a shame that purported professionals take up sides like kids in a sandbox and detract from the focus of the org, to the chagrin of the membership. Every irg has the doers and the detractors and the rest are card carrying termites that one never sees or hears from until election time.
2 hours ago via mobile · Like · 👍 2

 **Larry Yellon** What' ironic Jim, is that this guy is just an absolute loser who has nothing to show for his miserable life than 3 bankruptcies. No family, no friends, no career. By his sworn admission to the court, he earns $60.00 a week, pays $500.00 a month rent and has a car worth $2500.00. Gary said it all. His financial and emotional cost to a 30 year trade association has been monumental. In today's busy world, most people would not give this miscreant the time of day. He knows this and must seek attention in this bizarre and psychotic way. Normally, I would feel sorry for someone like him. But when I checked, my sorry tickets are gone. Gary Crowe, like his father, is one of the finest people I know. His remarkable restraint in the time leading up to the USDC Judge's dismissal of the laughable complaint is more than most could show.
2 hours ago · Like · 👍 2

 **Larry Yellon** I'm not sure that defending a federal lawsuit counts as "taking sides in a sandbox". We all have a lot better things to do professional, than deal with this creep. We did not seek out him.

Very truly yours,
Larry Yellon
2 hours ago via email · Like · 👍 1

EXHIBIT C Continued

 **Jim Lowery** Very well said, Scott. You can always tell the difference by who is tearing down the industry, and who is trying to build up the industry. Unfortunately, there are some, who, for a while, will side with those who portray themselves as the little David's battling the Goliath's, until, too late, they discover that they have been deceived by the little David, in this case. It is, in this case, no little David. It is only a small little man who is trying to promote himself and trying to make people think he is fighting for the best interest of the industry, by appointing himself the the morality policeman for the industry, while lacking the same. To defend this position, this little man must try to destroy others. I pity people, like that and I pray for them. I would rather be 100 miles from hell, heading away from it, rather than 1,000 miles away heading towards it. I am not a current member of NAPPS, but I can assure you, it is one of the best associations you can join.
2 hours ago · Like

 **Danise Woods** Scott, for the most part I don't think most people "took sides", most people who observed the individual's rants simply remained quiet. For me, it was quite simply a matter of right vs wrong and there was very clearly something wrong going on in the way the individual "chose" to bring light to a situation that he was unhappy with. Attacking anyone with a differing viewpoint. I didn't know the whole story, but he certainly made it difficult to understand his version. I try not to choose sides, I concentrate on choosing right over wrong.
about an hour ago via mobile · Like · 👍 3

 **Crystal Pilant** I like NAPPS. I get serves. I like serves.
26 minutes ago via mobile · Like · 👍 2

Write a comment...

Page **12** of **13**

Exhibit D


**Larry Yellon**
13 hours ago

I always thought bankruptcy filing was a solution for catastrophic events in one's life. I never knew it was part of a premeditated plan to obtain a masters degree in a correspondence college.

Share

3 people like this.

 **Margaret Kenney** they can not include student loans in a bankruptcy any more. to many professional people were doing that.
13 hours ago

 **Larry Yellon** Apparently you can if it's not government backed.
13 hours ago

 **Margaret Kenney** Wow that sucks
13 hours ago

 **Margaret Kenney** I just got new cancer drug today, 14 pills, $5,499.99
13 hours ago

 **Margaret Kenney** then they wonder why health care is so much
13 hours ago

**Larry Yellon** You have all of our prayers, and that is free.
13 hours ago · 👍 1

**Margaret Kenney** thanks i need them again
13 hours ago · 👍 1

 **Robin Martinelli** Funny
15 hours ago via mobile

 **David Hahn** Play nice, Larry, Gary's email was great.
16 hours ago via mobile · 👍 1

 **Kristopher Nicholson** I believe certain jurisdictions in Florida only allow absolute scumbags to file bankruptcy.
13 hours ago via mobile

**Larry Yellon** I guess that goes for Illinois where his 3 were done.
13 hours ago

**Kristopher Nicholson** Unreal. What an absolute waste of time and energy.
13 hours ago via mobile

 **Larry Yellon** Kris, did you notice the great detail he went into about his 3 bankruptcy filings. Not!!!! A day before he said he was a man who believed in paying his debts. I don't think so.
13 hours ago · 👍 1

**Kristopher Nicholson** He most certainly believes in paying his debts!!! (He just doesn't believe it should be with his money) hehe
13 hours ago via mobile · 👍 2

 **Michael Kern** Gary email hit all the points today! Finally a rebuttal to his repeated comments.
13 hours ago via mobile · 👍 1

**Robert Dayton** Wow!
2 hours ago via mobile

Page 13 of 13